STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SANDRA LOZADA DURAN,

      Plaintiff,

v.                                Case No:  6:17-cv-428-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      Plaintiff Sandra Lozada Duran appeals to this Court from Defendant, the

Commissioner of Social Security's final decision denying her applications for disability

insurance benefits and supplemental security income. I have reviewed the record,

including the administrative law judge's ("ALJ") decision, the exhibits, and the joint

memorandum submitted by the parties. For the following reasons, I respectfully

recommend that the Commissioner's final decision be **affirmed**, pursuant to sentence four

of 42 U.S.C. § 405(g).

## I. Background[1]

      At the time of the administrative hearing, Plaintiff was forty-two years old (Tr. 54-

55). She has a high school education and past relevant work experience as a cashier-

checker and administrative assistant (Id.; Tr. 41, 63). On September 9, 2013, she applied

for benefits, alleging a disability onset date of February 1, 2013 (Tr. 24, 26, 225-238). Her

claims were denied initially and on reconsideration (Tr. 136-142, 145-155). At Plaintiff's

---

[1] The information in this section comes from the parties' joint memorandum filed on October 11,
2017 (Doc. 20).

request, the ALJ held a hearing on October 29, 2015 (Tr. 50-68). The ALJ issued an

unfavorable decision on December 3, 2015[2] (Tr. 21, 24-43). Plaintiff asked the Appeals

Council to review the ALJ's decision and on January 3, 2017, the Appeals Council denied

the request for review (Tr. 1-4). Thus, the ALJ's decision became the Commissioner's

final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted her

administrative remedies and her case is ripe for review.

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the

Commissioner's five-step sequential evaluation process set out in 20 C.F.R. §

416.920(a)(4). The ALJ must determine whether the claimant: (1) is currently employed;

(2) has a severe impairment; (3) has an impairment or combination of impairments that

meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work

in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir.

2004). The claimant bears the burden of persuasion through step four and at step five,

the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137,

146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial

gainful activity since her February 1, 2013 alleged onset date (Tr. 26). At step two, the

ALJ found Plaintiff was severely impaired by: fibromyalgia, systemic lupus

erythematosus, and depression (Tr. 26-27). At step three, the ALJ concluded that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled

---

[2] In their memorandum, the parties state that the ALJ's unfavorable decision was rendered on November 30, 2015 (Doc. 20 at 1), however, December 3, 2015 is the date recorded on the ALJ's written report (Tr. 43) and the Commissioner's cover letter (Tr. 21).

one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 27-31). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant requires work that is at most very low semi-skilled, which would be tasks performed so frequently as to be considered routine even though the tasks themselves might not be considered simple. The claimant can only lift and carry ten pounds frequently and twenty occasionally. The claimant can stand and/or walk for six hours. The claimant can sit for a total of six hours. The claimant should avoid frequent ascending and descending of stairs. The claimant should avoid pushing and pulling motions with her lower extremities. The claimant should avoid hazards in the workplace. The claimant can occasionally perform postural activities: balance, stoop, crouch, kneel and crawl, but cannot climb, ropes, or scaffolds, or climb ladders exceeding six feet. The claimant is limited to no more than occasional overhead reaching with the left non-dominant upper extremities. The claimant can only perform occasional fine manipulation with fingering. The claimant has non-exertional limitations which frequently affect her ability to concentrate upon complex or detailed tasks, but the claimant remains capable of understanding, remembering, and carrying out job instructions (as defined above). The claimant can make work related judgments and decisions. The claimant can respond appropriately to supervision, co-workers, and work situations. The claimant can deal with changes in a routine work setting.

(Tr. 31-41). At step four, the ALJ found Plaintiff unable to perform her past relevant work (Tr. 41). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy–like job router, furniture rental consultant, and sandwich board carrier–that Plaintiff could perform and therefore, she was not disabled (Tr. 42-43).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial

..

evidence. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" <u>Id.</u> "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

A.  <u>The ALJ's RFC Assessment Was Based On Substantial Evidence</u>

Plaintiff argues that his RFC assessment was not based on substantial evidence because the ALJ applied incorrect legal standards to the consideration of the medical opinions provided by the Park Place Behavioral treatment facility and Drs. Lodhi, Correa-Perez, and Harris (Doc. 20 at 18-22). Weighing the findings and opinions of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit clarified the standard the Commissioner is required to utilize when considering medical opinion evidence in

- 4 -

Winschel. There, the court held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79; see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause to reject exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[3] or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the medical opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no

---

[3] When a treating physician makes conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

weight." <u>Hill v. Barnhart</u>, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); <u>see also</u> <u>Sullivan v. Comm'r. Soc. Sec.</u>, No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); <u>Bumgardner v. Comm'r Soc. Sec.</u>, No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); <u>Bliven v. Comm'r Soc. Sec.</u>, No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); <u>Graves v. Comm'r Soc. Sec.</u>, No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

The definition of "treating source" found in the regulations is narrow and includes a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or who has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." <u>Caplan v. Comm'r Soc. Sec.</u>, Case No. 6:15-cv-1926-Orl-CM, 2017 WL 1030875, at *3-4 (M.D. Fla. Mar. 17, 2017) (citing 20 C.F.R §§ 404.1502, 416.902).

1. Park Place Behavioral

Plaintiff was treated for depression-related symptoms at Park Place Behavioral on October 4, 2013 (Tr. 400-406). She was evaluated at the facility numerous times over the next two years for both physical and psychological illnesses (Tr. 408-417, 437-440-450, 507-519). She was last seen on October 15, 2015 (Tr. 519). At Park Place Behavioral, Plaintiff was evaluated by social worker Ana Salcedo (whose reports were reviewed by "licensed practitioner of the healing arts," Martha Bozeman), Glaucia Wagner (an advanced registered nurse practitioner), and Aloma Alcober (unknown credentials) (Tr. 406, 417, 443, 513-518). The treatment notes document Plaintiff's treatment history for depression, arthritis, and lupus. None of the providers made a statement about Plaintiff's ability to participate in substantial gainful employment.

Plaintiff contends that although the ALJ discussed some of the records from Park Place Behavioral, he ultimately erred by failing to "note the weight he assigned to the

opinion of the *treating facility* ..." (Doc. 20 at 18) (emphasis added). Plaintiff argues that because of the error, "it is impossible to know how the opinions from the treating facility were factored into the [RFC]" (Doc. 20 at 19).[4]  As a threshold matter, a "facility" is not an acceptable medical source. An "acceptable medical source" can only be one of the following: a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or a qualified speech-language pathologist. See 20 C.F.R. §§ 404.1502(a). The regulations do not recognize an institution as a "treating source."

Although I have identified Ms. Salcedo, Ms. Wagner, and Ms. Alcober[5] as treatment providers, Plaintiff fails to identify any physician or other provider at Park Place Behavioral who authored relevant treatment notes or who provided an opinion on Plaintiff's ability to work despite her condition.

Additionally, Plaintiff has not directed the Court's attention to any opinion from a treating source at Park Place Behavioral that concerns her work-related/functional limitations. Merely referencing diagnoses is insufficient at this stage in the litigation. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of ...

---

[4]  Plaintiff makes reference to several Global Assessment of Functioning (GAF) scores assessed by practitioners at Park Place Behavioral (Doc. 20 at 18-19). She argues that the ALJ erred by failing to weigh the treatment notes from the facility, including recorded GAF scores of 45 and 50 (Id.). The GAF scale is a tool used by mental health practitioners to assess an individual's overall level of functioning and make treatment decisions. Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008); Parsons v. Astrue, No. 5:06cv217/RS-EMT, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008). The Commissioner has declined to endorse the use of GAF scores in disability assessments. See O'Connell v. Colvin, No. 8:13-cv-2140-T-TGW, 2014 WL 4660633, at *5 (M.D. Fla. Sept. 17, 2014) (citing Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)); see also Luterman v. Comm'r of Soc. Sec., 518 F. App'x 683, 690 (11th Cir. 2013). "A GAF score does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work.'" Ward, 2008 WL 1994978, at *3. Notably, the American Psychiatric Association abandoned the GAF score in the most recent edition of the DSM "for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice." American Psychiatric Ass'n, DSM, 16 (5th ed. 2013) (quoted in Braid v. Comm'r of Soc. Sec., No. 6:13-cv-230-Orl-GJK, 2014 WL 1047377, at *5 n. 9 (M.D. Fla. Mar. 18, 2014)).

[5]  The ALJ considered, but did not expressly weigh specific treatment notes from these practitioners (Tr. 35-39). Plaintiff's argument does not challenge the ALJ's application of the regulations to specific testimony and only invokes the regulations as they relate to the treatment facility as a whole.

impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."); Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A] 'mere diagnosis ... says nothing about the severity of the condition ... [D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition'") (internal citations omitted).

   2. Dr. Lodhi

  Plaintiff argues that the ALJ committed reversible error by failing to indicate the weight he assigned to Dr. Abdul Lodhi's opinions of Plaintiff's "continued pain and multiple trigger points" (Doc. 20 at 19-20). Plaintiff treated with Dr. Lodhi at the Florida Arthritis and Osteoporosis Center, from September 6, 2013 to May 12, 2014. The doctor diagnosed her as having arthralgia of multiple sites, autoimmune disease not else classified, fatigue and fibromyalgia (Tr. 395, 398, 456, 459, 471, 473). Plaintiff has not presented any evidence showing that she was prejudiced (a) by the ALJ's failure to weigh Dr. Lodhi's testimony, or (b) by a determination by Dr. Lodhi that Plaintiff was more restricted than is reflected in her RFC assessment. Cf. Snell v. Comm'r Soc. Sec., Case No. 6:12-cv-1542-Orl-22TBS, 2013 U.S. Dist. LEXIS 185166, at *9 (M.D. Fla Dec. 6, 2013) (The ALJ's error must result in prejudice, such that had the ALJ done things differently, the RFC consideration, and ultimate disability decision, would be different) (citing James v. Astrue, No. 3:11-cv-226-J-TEM, 2012 U.S. Dist. LEXIS 32312, at 6-7 (M.D. Fla. Mar. 12, 2012)). Lastly, as stated previously, mention of a diagnosis – without a discussion of functional limitations – is insufficient to show prejudicial error at this stage in the appeal.

3. Drs. Correra-Perez and Harris

Dr. Correra-Perez diagnosed Plaintiff with unspecified myalgia and myositis, pain in joints, unspecified disorders of bursae and tendons in her shoulder region, bicipital tenosynovitis, thoratic or lumbosacral neuritis-unspecified, lumbago, as well as pain in joint-ankle/foot/lower leg and hand (Tr. 503). Dr. Harris diagnosed Plaintiff with Lupus and a left arm paresthesia likely caused by Fibromyalgia (Tr. 388-390). Plaintiff argues that it is unknown whether (and to what extent) the ALJ factored these diagnoses into the RFC because the ALJ failed to weigh these opinions, thereby committing reversible error (Doc. 20 at 20-22). Again, Plaintiff's failure to allege prejudice or to direct the Court to any opinion authored by Dr. Correa-Perez or Dr. Harris that offers a more restrictive functional limitation than that included in her RFC is fatal to her argument.

B.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff argues that the ALJ failed to pose a hypothetical question (and ultimately relied on a flawed hypothetical) that did not fully account for all of her limitations (Doc. 120 at 28-30). Plaintiff's argument is grounded in her objection to the ALJ's handling of the medical opinion testimony, as discussed above in section IV.A (Id. at 28-29) ("In the instant case, the ALJ, as stated in Issue Number 1 of this brief above, assigned a RFC to the claimant that was not supported by substantial evidence ...Thus, in the instant case, the ALJ posed and relied on a hypothetical question containing these same limitations ... the testimony of the vocational expert should be rejected because it did not fully and accurately reflect the claimant's conditions."). Because I have rejected Plaintiff's contentions as they relate to the ALJ's consideration of the treatment records from Park Place Behavioral and the medical opinions of Drs. Lodhi, Correra-Perez and Harris, I necessarily reject the same arguments as a basis for challenging the vocational expert's testimony.

C.  <u>The ALJ Properly Evaluated Plaintiff's Credibility</u>

The remaining issue is whether the ALJ properly considered Plaintiff's subjective complaints about her condition (Doc. 20 at 31-34). In the Eleventh Circuit, "[i]n order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)); <u>Singleton v. Comm'r Soc. Sec.</u>, No. 6:12-cv-683-Orl-GJK, 2013 WL 5236678, at *5 (M.D. Fla. Sept. 17, 2013). This pain standard applies to complaints of subjective conditions other than pain. <u>Holt</u>, 921 F.2d at 1223. A claimant's subjective testimony, supported by medical evidence that satisfies the pain standard, is itself sufficient to support a finding of disability. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987). "If the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." <u>Wilson</u>, 284 F. 3d at 1225.

Here the ALJ made the following determination:

> In assessing the credibility of the claimant's allegations of disability the undersigned has considered multiple factors. The claimant is a pleasant individual. At the hearing, she was well represented by an experienced representative. She does have some difficulties and the undersigned is not unsympathetic with these difficulties. Nonetheless, this fine individual has significant potential ... In reaching the conclusion about the claimant's [RFC], [I have] also considered the effects of the claimant's alleged symptoms in accordance with, the criteria set forth in the Regulations. The claimant has an impairment that is reasonably expected to produce the type of symptoms she alleges, but her complaints suggest a greater severity of impairment that can be shown by the objective medical evidence alone ... [I do] not find the credibility of the claimant's allegations [of] disability to be fully credible. Her allegations of

disability are not consistent with the objective findings in the medical evidence of record. The claimant has a wide range of daily activities which are inconsistent with her alleged severity of pain and functional limitations. The claimant's medication mostly controls her anxiety and depressive symptoms. Further, while the medical records indicate that the claimant reports chronic pain, it should be noted that "chronic pain" and severe pain are not synonymous ... Finally, the medical evidence of record does not disclose any major concerns about side effects by the several doctors who examined/treated the claimant. In consideration of all these factors, the undersigned finds her allegations of disability are not credible.

(Tr. 40-41). Plaintiff argues that the ALJ failed to offer any specific reasons to support this adverse credibility determination (Doc. 20 at 34).

Plaintiff's argument is not persuasive. The ALJ fully articulated his findings and resulting credibility determination. The ALJ states that in developing Plaintiff's RFC assessment he "considered all symptoms and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of [the Regulations]" (Tr. 32). He then explained the process by which he evaluated Plaintiff's symptoms, reciting 20 C.F.R § 404.1529 and 416.929 and Social Security Ruling 96-4p and 96-7p (Tr. 32). The ALJ also considered the following evidence, expressly in accordance with the requirements of 20 C.F.R. § 404.1527 and 416.927 and Social Security Ruling 96-2p, 96-5p and 06-3p: Plaintiff's function report, pain questionnaire, and anxiety questionnaire; Plaintiff's supplemental anxiety questionnaire; Plaintiff's hearing testimony; Plaintiff's report of daily activities; the third party function report and third party anxiety questionnaire completed by Plaintiff's husband, Hector Vélez; blood and other objective testing, including MRIs; and treatment notes from providers (Tr. 32-39).

After considering this information, the ALJ concluded that Plaintiff's subjective complaints were not consistent with the objective medical evidence, and that she has "a

wide range of daily activities which are inconsistent with her alleged severity of pain and functional limitations." (Tr. 41). The ALJ also noted that Plaintiff's "medication mostly controls her anxiety and depressive symptoms." (Id.). Whether the Court would agree with these conclusions if it were sitting as the finder of fact is irrelevant. The ALJ's findings are supported by substantial evidence which is all that the law requires.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on February 5, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record